IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES LUCARELLI, | : | |
| | : | |
| Plaintiff | : | Case No. 4:06-CV-53 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| GARY NORTON, District Attorney, | : | |
| ET AL., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**March 17, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court are two Motions to Dismiss Plaintiff Charles Lucarelli's ("Plaintiff" or "Lucarelli") Complaint. First, pending before the Court is a Motion to Dismiss Plaintiff's Complaint (doc. 3) filed by Defendant Thomas M. Marsilio, Esquire ("Marsilio") on January 17, 2006. We also have before us a Motion to Dismiss Plaintiff's Complaint (doc. 16) filed by Defendants Gary Norton, District Attorney, and Tami Kline, Clerk of Courts ("Norton" and "Kline" respectively) on January 23, 2006. Finally, on January 31, 2006, Plaintiff filed a "Motion to Dismiss Defendant's Motion to Dismiss or in the Alternative Brief in

Support of.[1]" (Rec. Doc. 8).

For the reasons that follow, Defendants' Motions will be granted and the case closed.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY:**

On January 9, 2006, Plaintiff filed the instant civil rights action in the United States District Court for the Middle District of Pennsylvania against Defendants arising out of a criminal proceeding involving Plaintiff in 2004. Plaintiff retained Defendant Marsilio to represent him in criminal charges that were filed against him in the Columbia County Court of Common Pleas. Plaintiff paid Defendant Marsilio a non-refundable retainer of $10,000 to represent him through a jury trial. The charges involved Plaintiff's alleged straying of a toxic and dangerous substance at another vehicle out of a tank in the trunk of his automobile. As the criminal charges proceeded to trial, Plaintiff indicated to Defendant Marsilio that he was unhappy with the quality of representation provided to him on the criminal charges and that his advice to accept the guilty plea was unsound. Plaintiff also

---

[1] As accurately submitted by Defendants Norton and Kline in their reply brief, Plaintiff filed a Motion to Dismiss Defendants' Motion on January 31, 2006, as well as a supporting brief on February 8, 2006. (Rec. Docs. 8, 9). Plaintiff's Motion to Dismiss indicates that it is a reply to Defendant Marsilio's Motion. Plaintiff has also submitted a reply brief in support of his Motion to Dismiss, as well as a "brief in support of motion to grant judgment of Plaintiff complaint." (Rec. Docs. 11, 12). We will construe Plaintiff's multiple submissions as briefs in opposition to Defendants' Motions.

refused to heed Defendant Marsilio's advice to hire a Toxic Substances Expert. Consequently, Defendant Marsilio filed a Motion to Withdraw as Counsel with the Columbia County Court of Common Pleas. Following a July 8, 2005 hearing at which Plaintiff was present and participated, the Motion was granted by the Columbia County Court of Common Pleas. Defendant Marsilio then ceased his involvement in representing Plaintiff and did not participate in the trial on the criminal charges at which Plaintiff was convicted of a felony or felonies.

Plaintiff subsequently filed a complaint with the fee dispute committee of the Luzerne County Law and Library Association which resulted in Plaintiff being awarded a $862.50 refund. On November 2, 2005, Plaintiff filed a complaint in the Luzerne County Court of Common Pleas alleging a breach of contract by Defendant Marsilio.

On January 9, 2006, Plaintiff filed the instant complaint in this Court. In the complaint, Plaintiff alleges that he was denied a fair trial pursuant to the Sixth Amendment of the United States Constitution and that the Commonwealth denied him an attorney, although he concedes that a "stand-by attorney" was available. (Compl. ¶¶ 1-6). Specifically, Plaintiff alleges that his complaint "revolves around an intentional, willful conspiracy by the Clerk of Courts, Tami Kline, and the Columbia County District Attorney, Gary Norton, in collusion with Attorney

Thomas Marsilio to deny a United States citizen a fair and just trial that should be afforded to all citizens under the United States Constitution." Allegedly, Mr. Norton and Tami Kline manipulated the jury pool selection by moving Mr. Lucarelli up a half a day." Id. at ¶ 5. Moreover, while Plaintiff's main assertions appear to relate to his hiring of Defendant Marsilio to represent him in the criminal action and Defendant Marsilio's subsequent withdrawal as counsel, Plaintiff also asserts that Defendant Norton denied him a fair trial by conduct that occurred during the prosecution of the criminal charges against him. Such claims relate to Defendant Norton's actions at the preliminary hearing, at Defendant Marsilio's withdrawal hearing, and at the time of jury selection. Id. at ¶¶ 9-10, 15, 16-17. Plaintiff further alleges that the Clerk of Courts' Office changed the jury selection time to begin earlier in the day than Plaintiff expected for the alleged purpose of getting a better jury for Plaintiff's criminal trial. Id. at ¶¶ 16-17.

On January 17, 2006 and January 23, 2006, Defendant Marsilio and Defendants Norton and Kline respectively filed Motions to Dismiss Plaintiff's complaint. The Motions have been fully briefed and are therefore ripe for disposition.

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**DISCUSSION:**

**A. Motion to Dismiss filed by Defendant Marsilio**

In the Motion, Defendant Marsilio argues that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendant Marsilio first asserts that he was not acting under color of state law as he was a private party, not a government official. "He [Defendant Marsilio] was privately retained by the Plaintiff to represent him in criminal charges. Defendant Marsilio thus challenges

that the Plaintiff will be unable to establish that he was acting under color of state law." (Def. Marsilio's Br. Supp. Mot. Dismiss at 5). Defendant Marsilio then contends that even if Plaintiff is able to establish that he was acting under color of state law, the complaint fails to provide facts sufficient to establish a conspiracy pursuant to 42 U.S.C. § 1983.

We are in agreement with Defendant Marsilio that although the complaint does not contain a statement of the precise cause of action, Plaintiff appears to be asserting a civil rights cause of action pursuant to 42 U.S.C. § 1983 for violation of his constitutional right to due process of law under the Fifth Amendment and his rights under the Sixth Amendment to a trial by an impartial jury and to have assistance of counsel. Section 1983 provides for a cause of action against persons "who, under color of any statute . . . of any State . . . subject[] . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The statute "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). "To state a claim under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Thus, the initial inquiry in a §

1983 action focuses upon: "(1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

As the Third Circuit Court of Appeals instructed in Angelico v. Lehigh Valley Hosp., 184 F.3d 268 (3d Cir. 1999), because Plaintiff sued a private party for actions taken in his role as an attorney, he must point to some action that is "fairly attributable" to the state. 184 F.3d at 277. "A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." Id. (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937 (1982) (internal quotation marks omitted)). The Supreme Court noted that "without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." Lugar, 457 U.S. at 937. The main focus of the inquiry is to determine whether the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law. Groman v. Township of Manalapan, 47 F.3d 628, 639 (3d

Cir. 1995).

Plaintiff appears to argue that Defendant Marsilio is a state actor because he conspired together with Defendants Norton and Kline to deprive him of his right to counsel and a fair trial. Plaintiff is not alleging that Defendants Norton and Kline were delegating their powers and authorities to Defendant Marsilio and providing him a "mantle of authority" such that his actions were really the actions of the state. Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192 (1988) ("In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action . . . in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor.").

We initially note that under Lugar, acting in concert or obtaining significant aid from a state actor requires a "conspiracy" or at least "willful participation" for the purposes of § 1983. A private individual can become a state actor for purposes of a § 1983 conspiracy liability if he or she is a "willful participant in joint activity with the state or its agents." United States v. Price, 383 U.S. 787, 794 (1966); see also Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) ("Although not an agent of the state, a private party who willfully participates in a joint conspiracy

with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983.").

"The test for determining state action requires a showing of conspiratorial or other concerted action." Dutton v. Buckingham Twp., 1997 U.S. Dist. LEXIS 18068 (E.D. Pa. 1997). The United States District Court for the Eastern District of Pennsylvania provided instruction concerning conspiratorial agreements or meetings of the mind between private parties and state actors in Panayotides v. Rabenold, 35 F.Supp.2d 411 (E.D. Pa. 1999). In Panayotides, the District Court held that a plaintiff must allege particularized facts which at least support a conspiratorial agreement or meeting of the minds between the private party and the state actor, stating that:

> The test for determining state action requires a showing of conspiratorial or other concerted action. . . A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient . . . Further, agreement is the *sine qua non* of a conspiracy.

Id. at 419 (internal citations and quotations omitted).

Against that backdrop, we note that as the Third Circuit Court of Appeals explained in Angelico, attorneys performing their traditional functions will not be

considered state actors solely on the basis of their position as officers of the court. Angelico, 184 F.3d at 277; Polk County v. Dodson, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983) ("[P]rivate attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983.").

Moreover, Defendant Marsilio accurately submits that the facts of the case sub judice are very similar to those in Limehouse v. Delaware, 144 Fed. Appx. 921 (3d Cir. 2005), in which a losing litigant filed a § 1983 action against the judge, an employee of the Office of the Prothonotary, the Chief of Delaware State Capitol Police, and counsel for the opposing party. The Third Circuit Court of Appeals held that the private attorney for the opposing party could not be held to be a state actor because there were no facts which established any agreement between the attorney and the state actors to violate the plaintiff's civil rights. Additionally, the Third Circuit instructed that a private attorney's representation in a court case, sitting alone, does not act under color of law when performing his function as counsel. Id. at 923 (citing Polk County v. Dodson, 454 U.S. 312, 325 (1981)). Because they could find no evidence establishing any nexus between the actions of

the private attorney, Cobb and the state actors, the Court dismissed the cause of action against Defendant Cobb. Limehouse, 144 Fed. Appx. at 923.

After a careful review of the complaint and taking all allegations in Plaintiff's complaint as true, as we must at this juncture, we find that Plaintiff alleges no facts which show any conspiratorial relationship or willful participation by Defendant Marsilio in any actions of the state actors which were alleged to have deprived him of his constitutional rights. Defendant Marsilio was a private party, not a government official, privately retained by Plaintiff to represent him with respect to criminal charges. Plaintiff's allegations fail to establish Defendant Marsilio's participation in any actions which were taken after he withdrew as counsel. Defendant Marsilio's withdrawal alone did not constitute any violation of Plaintiff's civil rights and any decisions regarding whether or not Plaintiff was given an extension of time to find new counsel, to obtain representation from the public defender, or to represent himself pro se were made following the Court's granting of Defendant Marsilio's withdrawal. Once he had withdrawn as counsel, Defendant Marsilio was precluded from participating in any way in the proceedings. As Plaintiff is unable to establish that Defendant Marsilio acted under color of state law, the first element necessary to maintain a § 1983 cause of action, Plaintiff's complaint is dismissed against Defendant Marsilio for failure to

state a claim upon which relief can be granted.[2]

**B. Motion to Dismiss filed by Defendants Norton and Kline**

In the Motion, Defendants Norton and Kline argue that Plaintiff's claims all arise out of his apparent conviction before the Columbia County Court of Common Pleas relating to accusations by Michael and Trudy Bennett concerning Plaintiff's actions to their vehicle; however, Plaintiff has not alleged that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[3]" Heck v. Humphrey, 512 U.S.

---

[2] As we have determined that Plaintiff is unable to establish that Defendant Marsilio acted under color of state law, we need not reach Defendant Marsilio's argument that Plaintiff's complaint does not constitute an actionable conspiracy because action under color of state law is an essential element to establish a civil rights conspiracy. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Marchese v. Umstead, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000) (To establish a civil rights conspiracy, a plaintiff must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law.)

[3] We note that at this juncture, as submitted by Defendants Norton and Kline, Plaintiff's multiple submissions in opposition to the pending Motions attempt to introduce extraneous, impertinent, and irrelevant material into this case, which are completely unresponsive to the issues raised by Defendants in their respective Motions. Consider, for instance, that Plaintiff raises the issue of certificates of service. As required by the applicable procedural rules, the Motion filed by Defendants Norton and Kline did contain certificates of service showing the manner of service upon Plaintiff pursuant to Fed.R.Civ.P. 5(b)(2)(B) at the address provided by Plaintiff. Accordingly, the service of such documents upon Plaintiff satisfies applicable Federal Rules of Civil Procedure. Moreover, Plaintiff fails to make a showing as to how his allegations avoid the grant of absolute immunity to Defendant Norton for his prosecutorial actions or the absolute immunity of Defendant Kline for her quasi-judicial activities, as will be elaborated upon below.

477 (1994); see also Defs.' Norton and Kline Br. Supp. Mot. Dismiss at 5. Second, Defendants assert that Plaintiff's complaint should be dismissed as to Defendant Norton since the allegations against him arise out of his prosecutorial actions for which he is entitled to absolute immunity from this civil suit. Finally, Defendants contend that Plaintiff's complaint should be dismissed as to Defendant Kline as Plaintiff's allegations against her relating to jury selection are based upon her actions that are integral to the judicial process for which she is entitled to absolute quasi-judicial immunity.

After a careful review of the record, we agree with Defendants Norton and Kline that Plaintiff's allegations clearly imply the invalidity of his conviction before the Columbia County Court of Common Pleas, based upon Defendants' conduct. In Heck v. Humphrey, the United States Supreme Court instructed the following:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would

> necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87. As Defendants explain, the rationale for this determination is set forth in a Third Circuit Court of Appeals decision, Chapman v. Pennsylvania, 82 Fed. Appx. 59 (3d Cir. 2003). The Third Circuit Court of Appeals stated the following:

> As summarized by the Second Circuit in Huang v. Johnson, the Court's rationale was based, in part, on a desire to avoid parallel litigation over the issues of probable cause and guilt, prevent the creation of two conflicting resolutions arising out of the same or identical transaction, and preclude a convicted criminal defendant from making a collateral attack on the conviction through the vehicle of a civil suit. What Chapman sought to do through the filing of his § 1983 action was to simultaneously have his DUI and resisting arrest convictions and sentence declared invalid, and to recover damages for the allegedly improper actions of the named defendants–all while his direct appeal was still pending in state court. This type of hybridization, as the First Circuit referred to it in Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998), is foreclosed by the Supreme Court's decision in Heck, which makes the impugning of an allegedly unconstitutional conviction in a separate, antecedent proceeding a prerequisite to a resultant section 1983 action for damages. As Justice Souter explained in Heck, allowing a state prisoner to proceed directly with a federal court § 1983 attack on his conviction or sentence would wholly frustrate explicit intent as declared in the habeas exhaustion requirement. This appears to be exactly what Chapman did. Without waiting for a decision by the Superior Court on his direct appeal, Chapman sought to challenge his convictions and sentence and to obtain damages through a § 1983 action filed in the United States District Court for the Western District of Pennsylvania.

Id. at 64 (internal citations and quotations omitted).

In this case, as noted, Plaintiff's allegations imply the invalidity of his conviction based upon Defendants' conduct; however, Plaintiff has failed to allege that his conviction has been reversed, expunged or otherwise found to be invalid. Moreover, Plaintiff is seeking to recover damages, specifically $17,000,000.17 in "compensatory damages for pain and suffering, fraud, punitive and anxiety" for an alleged unconstitutional conviction, imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid. Consequently, we find that pursuant to Heck, Plaintiff's § 1983 complaint must be dismissed.

Assuming arguendo that Plaintiff had alleged that his conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by federal court's issuance of a writ of habeas corpus under Heck, we conclude that Plaintiff's complaint should be dismissed as against Defendants Norton and Kline on the basis of absolute and absolute quasi-judicial immunity respectively, for the reasons that follow.

First, as submitted by Defendants, in Imbler v. Pachtman, 424 U.S. 409 (1976), the United States Supreme Court held that prosecuting attorneys are

absolutely immune from suits arising out of actions within their prosecutorial duties. See also Burns v. Reed, 500 U.S. 478 (1991). Additionally, in Smith v. Garretto, the Second Circuit Court of Appeals summarized the absolute immunity that prosecutors may maintain against civil rights actions by stating that:

> A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing[.] Such immunity also extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.

147 F.3d 91, 94 (2nd Cir. 1998) (internal citations and quotations omitted). A functional test is applied to determine if a prosecutor enjoys absolute immunity; a prosecutor does not receive absolute immunity by virtue of his title, but rather, by the nature of the functions and actions, which the prosecutor performs. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). A prosecutor's actions taken in furtherance of the initiation of a prosecution or for a judicial proceeding qualify for absolute immunity. Buckley, 509 U.S. at 273.

In this case, Plaintiff complains of District Attorney Norton's actions at the preliminary hearing, at Attorney Marsilio's hearing to withdraw as Plaintiff's counsel, and at the time of jury selection. (Compl. ¶¶ 9-10, 16-17). As in Burns, 500 U.S. 478 (1991), in which the prosecutor appeared before a judge at a probable cause hearing relating to a search warrant and the Supreme Court ruled that

appearing at such hearings is “intimately associated with the judicial phase of the criminal process” and “. . . pretrial court appearances by the prosecutor in support of taking criminal action against a suspect present a substantial likelihood of vexatious litigation that might have an untoward effect on the independence of the prosecutor,” the prosecutor in this case was involved in a pre-trial hearing in furtherance of a criminal prosecution. Id. at 491-92. Such actions are the very ones that are afforded absolute immunity because they are actions taken in the course of District Attorney Norton’s position as a prosecutor, directly related to his role as a prosecutor, and intimately associated with the criminal justice process. Accordingly, District Attorney Norton’s actions are protected by absolute immunity against the civil rights claims brought by Plaintiff. Plaintiff’s complaint is therefore dismissed as against Defendant Norton.

Second, absolute immunity and quasi-judicial immunity are enjoyed by a clerk of courts when the clerk is performing duties required by statute or at the direction of judicial authority. See, e.g., Pokrandt v. Shields, 773 F. Supp. 758, 765 (E.D Pa. 1991); Mercedes v. Barrett, 453 F.2d 391, 392 (3d Cir. 1971); Gonzales v. Clerk of Courts of Berks County, 1991 U.S. Dist. LEXIS 9814 (E.D. Pa. 1991).

In Gonzales, the plaintiff filed four separate petitions for transcripts and

notes of testimony with the Clerk of Courts, who proceeded to file the petitions; however, a common pleas judge issued an order denying the petitions. The plaintiff filed suit against the Clerk of Courts for refusing to provide the requested records. The United States District Court for the Eastern District of Pennsylvania granted summary judgment on the basis of absolute quasi-judicial immunity and declared that:

> The Third Circuit Court of Appeals has long recognized that . . . in addition to the recognized immunity enjoyed by judicial and quasi-judicial officers . . . any public officer acting pursuant to a court directive is also immune from suit.
>
> Moreover, it has been held that clerks of the court, in particular, are protected by judicial immunity. Lockhart, 411 F.2d at 460 (prothonotary, acting pursuant to court directive, was entitled to absolute immunity from liability under 42 U.S.C. § 1983); DeFerro v. Coco, 719 F. Supp. 379 (E.D. Pa. 1989) (court clerk was entitled to absolute immunity because his actions were not only quasi-judicial, but pursuant to the judge's direction); Davis v. Quarter Sessions Court, 361 F. Supp. 728 (E.D. Pa. 1973) (prisoner's civil rights claim against clerk of quarter sessions barred by doctrine of judicial immunity).

Gonzales, 1991 U.S. Dist. LEXIS 9814 at *5-6.

In this case, Plaintiff alleges that Clerk of Courts Kline changed the jury selection time to begin earlier in the day than Plaintiff expected for the alleged purpose of getting a better jury for Plaintiff's criminal trial. (Comp. ¶¶ 16-17). The determination of when jury selection shall begin is clearly an action which is

integrally related to the judicial process. Moreover, as accurately submitted by Defendants, aside from unsubstantiated hearsay, Plaintiff fails to specify with particularity, or even generally, how the alleged change in the time for jury selection altered the make-up of the jury pool, prevented him from exercising his challenges to any potentially biased members of the jury pool, or otherwise caused him any injury or resulted in the deprivation of any Constitutional right belonging to him. We find that Plaintiff failed to state a claim upon which relief may be granted as against Defendant Kline, acting as Clerk of Courts, because she is entitled to the protection of absolute and quasi-judicial immunity.

In summary, and taking Plaintiff's allegations as true as we must, Plaintiff's complaint is dismissed against Defendant Marsilio for failure to state a claim upon which relief can be granted as he is unable to establish that Defendant Marsilio acted under color of state law, the first element necessary to maintain a § 1983 cause of action. In addition, assuming arguendo that Plaintiff had alleged that his conviction was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by federal court's issuance of a writ of habeas corpus under Heck, Plaintiff's complaint is dismissed as against Defendants Norton and Kline on the basis of absolute and absolute quasi-judicial immunity respectively. Plaintiff's

complaint is dismissed and the case will be closed.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. The Motion to Dismiss Plaintiff's Complaint filed by Defendant Marsilio (doc. 3) is GRANTED.
2. The Motion to Dismiss Plaintiff's Complaint filed by Defendants Norton and Kline (doc. 6) is GRANTED.
3. Plaintiff's "Motion to Dismiss Defendant's Motion to Dismiss or in the Alternative Brief in Support of" (doc. 8) is construed as a brief in opposition to Defendants' Motions.
4. Plaintiff's complaint is dismissed.
5. The Clerk shall close the file on this case.

s/ John E. Jones III
John E. Jones III
United States District Judge